UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIELLE WARREN,

                        Plaintiff,

    v.

ULTIMATE FITNESS GROUP, LLC, *et al.*,

                        Defendants.

No. 19-CV-10315 (KMK)

OPINION & ORDER

---

Appearances:

Jack Tuckner, Esq.
Tuckner, Sipser, Weinstock & Sipser, LLP
New York, NY
*Counsel for Plaintiff*

George Barbatsuly, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
Newark, NJ
*Counsel for Defendants*
*Ultimate Fitness Group, LLC, OTF Royalties, LLC, and OTF Franchisor, LLC*

Eric O'Bryan, Esq.
Bond, Schoneneck & King, PLLC
Albany, NY
*Counsel for Defendants*
*HV Newburgh, LLC, HV Monroe, LCC, HV Poughkeepsie, Inc.*

KENNETH M. KARAS, District Judge:

      Danielle Warren ("Plaintiff") brings this Action against Ultimate Fitness Group, LLC ("Ultimate Fitness"), OTF Royalties, LLC, and OTF Franchisor, LLC (collectively, the "Florida Defendants") for violations under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as well as under Article 15 of the New York State Human Rights Law §§ 290 *et seq.* ("NYSHRL"), seeking declaratory and injunctive relief and

damages. Plaintiff alleges that she suffered discrimination on the basis of sex and that she was retaliated against and fired for opposing a severely hostile work environment due to sexual harassment. Plaintiff alleges that the Florida Defendants engaged in conduct that aided and abetted the retaliatory conduct of HV Newburgh, LLC, HV Monroe, LLC, HV Poughkeepsie, Inc., and John Gregorio (collectively, the "New York Defendants"), which resulted in the Plaintiff's demotion and then the ultimate termination of her employment. Now before the Court is Plaintiff's Motion To Amend/Correct the Amended Complaint (the "Motion"). (Dkt. No. 65.) Specifically, Plaintiff seeks to amend her complaint to add a claim of aiding and abetting under NYSHRL against the Florida Defendants and also to include additional Defendants following an asset purchase of the New York Defendant entities. For the following reasons, Plaintiff's Motion is denied.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

Plaintiff alleges the following facts: Plaintiff was hired by the New York Defendants in 2017 as a Studio Manager. (Am. Compl. ("AC") ¶ 10 (Dkt. No. 21).)[1] Gregorio is the owner of the New York Defendant entities and was Plaintiff's direct manager. (*Id.* ¶¶ 6, 11.) Defendants Ultimate Fitness Group, LLC, OTF Royalties, LLC, OTF Franchisor, LLC, HV Newburgh, LLC, HV Monroe, LLC and HV Poughkeepsie Inc. (all doing business as Orangetheory Fitness) operate fitness gyms. (*Id.* ¶ 9.) Plaintiff "always performed the essential functions of her job in

---

[1] Plaintiff often refers to the New York and Florida Defendants collectively as "Defendants," but the Court specifies which Defendants are being referred to for the sake of clarity.

an outstanding manner, and initially maintained a positive relationship with Defendant John Gregorio . . . ." (*Id.* ¶ 11.)

However, in 2019, Gregorio began subjecting Plaintiff to sexual harassment. (*Id.* ¶ 12.) Specifically, on or about April 29, 2019, Gregorio remarked to Plaintiff, "suck my dick." (*Id.* ¶ 13.) Plaintiff was highly upset about this comment, telling Gregorio that she did not appreciate his demeaning and sexualizing behavior. (*Id.* ¶ 14.) In response to Plaintiff's opposition to his "unwelcome and objectifying commentary," Gregorio became defensive, upset, and visibly angry toward Plaintiff. (*Id.* ¶ 15.) Gregorio then began retaliating against Plaintiff as a result of her unwillingness to submit to disparate treatment that was degrading the terms and conditions of her employment. (*Id.* ¶ 16.) Plaintiff began receiving multiple harassing follow-up calls and text messages from Gregorio, exacerbating the workplace hostility and her pain and suffering. (*Id.* ¶ 17.) Plaintiff took the day off on May 6, 2019 due to the stress from the discriminatory treatment by Gregorio. (*Id.* ¶ 18.) However, at about 3:00pm on May 6, 2019, Plaintiff received a text message from Gregorio stating that she would be suspended due to her perceived emotional turmoil. (*Id.* ¶ 19.)

On May 7, 2019, Plaintiff spoke to Gregorio on the phone with Stefan Nash, another owner of the New York Defendant entities, where both stated for the first time that the staff "hates" Plaintiff. (*Id.* ¶ 20.) Nash described Plaintiff as a "bitch and a bully," and he indicated that they were upset that Plaintiff stood up to Gregorio's comments. (*Id.* ¶ 21.) When Plaintiff advised Nash of the "suck my dick" comment, the New York Defendants did not conduct any investigation or corrective action, and instead Plaintiff was dismissively told by Nash, "that's between you guys." (*Id.* ¶ 22.) On May 20, 2019, Plaintiff returned to work after her suspension. (*Id.* ¶ 23.) As the New York Defendants did not have a human resources

department, Plaintiff did not have anyone there to complain to, except for the perpetrators of discrimination, Gregorio and Nash.  (*Id.* ¶ 24.)  On May 26, 2019, Plaintiff formally reported the sexual harassment and retaliation through the Florida Defendants' Facebook page, using "messenger," as that was the only existing human resources department available to Plaintiff.  (*Id.* ¶ 25.)  Plaintiff notified the Florida Defendants in writing that she felt her "job was at risk" following her suspension for reporting to ownership that Gregorio had told her to "suck his dick."  (*Id.* ¶ 26.)  On May 27, 2019, the Florida Defendants' human resources department wrote back to Plaintiff, thanking her for "reaching out," while further representing that they take "feedback of this nature very seriously."  (*Id.* ¶ 27.)  The Florida Defendants further indicated that "our team will be investigating this immediately."  (*Id.*)  On the same day that Florida Defendants told Plaintiff that her protected complaint would be promptly investigated—and one day after Plaintiff invoked a protected status—she was removed as the incoming manager of a facility that the New York Defendants were in the process of opening.  (*Id.* ¶ 28.)  On June 6, 2019, Plaintiff learned that she was being excluded from important communications about sales and development from the corporate New York Regional Business Manager, Rich Mejias, who was ostensibly investigating her sexual harassment complaint (Mejias's title was Franchise Business Manager-New England Region, and he was in charge of overseeing the New York Defendants) while Gregorio and Nash continued to degrade the terms and conditions of Plaintiff's employment.  (*Id.* ¶ 29.)

Ultimately on June 11, 2019, Plaintiff was terminated by the New York Defendants. (*Id.* ¶ 30.)  During her exit conversation while Gregorio was firing Plaintiff, he again failed to deny that he told Plaintiff to fellate him, and he indicated that he was unhappy with Plaintiff even before he engaged in the discriminatory behavior against her.  (*Id.* ¶ 31.)

4

B.  Procedural History

Plaintiff commenced this Action on November 6, 2019.  (Dkt. No. 1.)  On December 26, 2019, the Florida Defendants filed an answer.  (Dkt. No. 13.)  On the same day, the Florida Defendants filed a letter requesting a pre-motion conference to file a motion to dismiss.  (Dkt. No. 14.)  On December 31, 2019, Plaintiff filed a response to the Florida Defendants' letter.  (Dkt. No. 16.)  On January 9, 2020, the Court issued a Memo Endorsement stating that it would hold a pre-motion conference on the Florida Defendants' request to file a motion to dismiss.  (Dkt. No. 17.)  On January 10, 2020, the New York Defendants filed an answer.  (Dkt. No. 20.)  On February 4, 2020, the Court held a conference and granted Plaintiff the opportunity to file an amended complaint by no later than February 18, 2020.  (*See* Dkt. (minute entry for Feb. 4, 2020).)

On February 13, 2020, Plaintiff amended her complaint.  (Dkt. No. 21.)  On February 24, 2020, the New York Defendants filed an answer to the Amended Complaint.  (Dkt. No. 22.)  On February 27, 2020, the Florida Defendants filed an answer to the Amended Complaint.  (Dkt. No. 24.)  The Parties were unsuccessful at their attempt to resolve the matter through mediation.  (Dkt. No. 30.)  On August 25, 2020, the Court approved the Parties' proposed discovery schedule.  (Dkt. No. 34.)

On March 19, 2021 the Court held a pre-motion conference with the Parties.  (*See* Dkt. (minute entry for March 19, 2021).)  During the conference, the Court set Oral Argument for the upcoming Motion To Amend the Complaint for May 26, 2021.  (*Id.*)  On March 29, 2021, the Parties filed a joint letter requesting an extension on the motion to amend the complaint.  (Dkt. No. 55.)  The Court granted the Parties' request and extended the briefing schedule through April 2021.  (Dkt. No. 56.)  On April 9, 2021, Plaintiff filed a Motion To Amend/Correct the Amended

Complaint and supporting papers. (Pl.'s Mem. of Law in Support of Plaintiff's Mot. To Amend the Complaint ("Pl.'s Mem.") (Dkt. No. 65).) On April 23, 2021, the Florida Defendants filed their opposition. (Defs.' Mem. of Law in Opposition to the Mot. To Amend ("Defs.' Mem" (Dkt. No. 66).) On April 30, 2021, Plaintiff filed her reply. (Pl.'s Reply Mem. of Law in Support of Mot. ("Pl.'s Reply") (Dkt. No. 68.) The Oral Argument on the Motion To Amend/Correct the Amended Complaint was adjourned twice. (Dkt. Nos. 70, 74.) On July 12, 2021, Plaintiff filed a letter requesting further leave to amend to include additional defendants who purchased the New York Defendant entities. (Dkt. No. 79.) On July 20, 2021, the New York and Florida Defendants each separately responded to Plaintiff's letter requesting leave to further amend her complaint. (Dkt. No. 82–83.) On July 23, 2021, the Court issued a Memo Endorsement directing the Parties to be prepared to address the issue of the unidentified purchasers of the New York Defendant entities as it related to the pending Motion To Amend at the upcoming Oral Argument. (Dkt. No. 85.)

On July 28, 2021, the Court held Oral Argument on the Motion To Amend to add an aiding and abetting claim against the Florida Defendants and also regarding Plaintiff's request to further amend to include additional defendants. (*See* Dkt. (minute entry for July 28, 2021).) Following Oral Argument, the Court reserved judgment. (*Id.*)

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[i]t is within the sound discretion of the district court to grant or deny leave to amend." *Barbata v. Latamie*, No. 11-CV-

7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (noting that a court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party" (citing *Foman*, 371 U.S. at 182)). But, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman*, 371 U.S. at 182).

      a. <u>Futility</u>

"To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016) (citation omitted); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." (citation omitted)). "The opposing party must establish that granting leave to amend would be futile." *Blagman v. Apple, Inc.*, No. 14-CV-5453, 2014 WL 2106489, at *5 (S.D.N.Y. May 19, 2014) (citation omitted); *see also Sotheby's, Inc. v. Minor*, No. 08-CV-7694, 2009 WL 3444887, at *3 (S.D.N.Y. Oct. 26, 2009) (same). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

7

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citation omitted). Generally, "[i]n adjudicating a [motion to dismiss], a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

    b. <u>Prejudice, Delay, and Bad Faith</u>

  If a party challenges a proposed amendment on the ground of prejudice, a court must evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (quotation marks omitted), *cert. denied,* 531 U.S. 1035 (2000). Courts also consider the procedural posture of the case. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment comes on the eve of trial and would result in new problems of proof.'" (citation and alteration omitted)); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend sought after discovery had closed and while summary judgment motion was pending). Although "[p]rejudice to the opposing party . . . has been described as the most important reason for denying a motion to amend," *Frenkel v. N.Y.C. Off–Track Betting Corp.*, 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (citation omitted), *adopted by* 701 F. Supp. 2d 544 (S.D.N.Y. 2010), only undue prejudice

9

warrants denial of leave to amend, *see A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000). The opposing party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Agerbrink*, 155 F. Supp. 3d at 454 (citation omitted).

As to delay, in the Second Circuit, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citation omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion . . . ." (citation omitted)). Where a significant period of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay. *See Park B. Smith, Inc. v. CHF Industries Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (describing burden to explain extended delay and collecting cases); *see also Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514, 2010 WL 445192, at *11 (S.D.N.Y. Feb. 8, 2010) ("[T]he court may deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." (emphasis and quotation marks omitted) (citing *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000)). However, courts have allowed amendment despite long intervals between the discovery of certain facts and the filing of an amended pleading. *See, e.g., Valentini v. Citigroup, Inc.*, No. 11-CV-1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months "insufficient ground to warrant denial of [a] motion to amend" where non-moving party "failed to establish bad faith or undue prejudice"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment two and one-half years after case began and noting that "even vague or

10

'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith" (citation omitted)).

"[W]hen the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment." *Primetime 24 Joint Venture v. DirecTV*, Inc., No. 99-CV-3307, 2000 WL 426396, at *5 (S.D.N.Y. April 20, 2000); *see also Blagman*, 2014 WL 2106489, at *3 ("To the extent that the defendants claim that [the plaintiff's] delay was strategic, they provide no showing of bad faith apart from the delay itself."); *Randolph Found. v. Duncan*, No. 00-CV-6445, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith.").

  B.  Analysis

    1. Aiding and Abetting under NYSHRL

Plaintiff seeks to add a claim of aiding and abetting under Section 296(6) of the NYSHRL against the Florida Defendants.  Section 296(6) states that it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so."  N.Y. EXEC. LAW § 296(6).  In order for a defendant to be liable as an aider and abettor under Section 296(6), a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal. *See Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998 (N.Y. 2004); *Kelly G. v. Bd. of Educ. of City of Yonkers*, 952 N.Y.S.2d 229 (App. Div. 2012); *see also Benson v. Otis Elevator Co.*, 557 Fed. Appx. 74, 77 (2d Cir. 2014); *Mereigh v. New York & Presbyterian Hosp.*, No. 16-CV-5583, 2017 WL 5195236, at *7 (S.D.N.Y. Nov. 9, 2017).  "Under [Section] 296(6), an individual

11

or [corporate] entity must 'actually participate[ ] in the conduct giving rise to a discrimination claim' to be held liable." *Francis v. Kings Park Manor, Inc.*, 91 F.Supp.3d 420, 434 (E.D.N.Y. 2015) (citation omitted). A Section 296(6) aiding and abetting claim may lie against an "out-of-state nonemployer." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017). However, a Plaintiff must demonstrate that the non-employer had "direct, purposeful participation" in the primary violation of the NYSHRL. *See Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020). The aider and abettor must "share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).

Plaintiff cannot establish that the Florida Defendants either participated in or shared intent or purpose with the New York Defendants for the conduct at issue. Plaintiff essentially claims that the Florida Defendants aided and abetted the New York Defendants because (1) the Florida Defendants did not "investigate" her complaints regarding Gregorio but informed him about them despite her request to keep them confidential; and (2) the Florida Defendants did not stop the New York Defendants from terminating her employment. (Pl.'s Mem. at 17; Pl.'s Decl. of William J. Sipser in Supp. of Its Mot. To Amend ("Sipser Decl.") ¶¶ 28–29, 31–32 (Dkt. No. 65-1).) But these facts, if taken as true to resolve the instant Motion, do not amount to direct, purposeful participation by the Florida Defendants to demonstrate a shared intent or purpose with the New York Defendants. *See Dodd*, 489 F. Supp. 3d at 268. Plaintiff argues that the Florida Defendants' failure to act in response to Plaintiff's complaints is legally cognizable under Section 296(6) because a supervisor's failure to take remedial action can rise to the level of actual participation. (Pl.'s Mem. at 17.) But this argument is unavailing. Failing to respond to others' violations of the NYSHRL does not, without more, support aiding and abetting

12

liability. *See Dodd*, 489 F. Supp. 3d at 271 (explaining that a plaintiff must show that the defendant "actually participate[d] in the conduct giving rise to a [retaliation] claim"). In *Lewis*, the district court explained that "failure to investigate allegations of sexual harassment does not violate the [NYS]HRL in and of itself," but that a supervisor may be individually liable if his/her/their remedial "failures allow, or even encourage, a primary violation to continue." *Lewis v. Triborough Bridge and Tunnel Auth.*, 77 F. Supp. 2d 376, 383 (S.D.N.Y. 1999). Plaintiff by her own admission acknowledged that the Florida Defendants were not her supervisors. (*See* Dep. of Danielle J. Warren ("Warren Dep.") 48:20-49:8, 198:24-199:14 (Dkt. No. 65-9).) In fact, courts in the Second Circuit have repeatedly dismissed aiding and abetting claims based on failure to take remedial action against defendants without supervisory or managerial duties over a plaintiff. *See, e.g.*, *McHenry v. Fox News Network, LLC,* No. 19-CV-11294, 510 F. Supp. 3d 51, 85–86 (S.D.N.Y. 2020) (finding that the plaintiff had not sufficiently pled retaliation aiding and abetting because plaintiff did not allege well-pled facts that the individual defendant at issue had a role in the retaliatory conduct); *Patrick v. Adjusters Int'l, Inc.*, No. 16-CV-2789, 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (dismissing aiding and abetting claims because the inadequate response to plaintiff's complaints did not constitute actual participation in the alleged conduct). Plaintiff does not allege that the Florida Defendants participated in any of the New York Defendants' discriminatory or retaliatory conduct. The alleged conduct – the harassment, suspension, and demotion of Plaintiff – all occurred *prior* to her reaching out to the Florida Defendants through Facebook messages to complain about Gregorio's conduct. (Dkt. No. 21, ¶¶ 13–23, 25.) Plaintiff also offers no facts to plausibly establish that the Florida Defendants were involved in her termination. Indeed, Gregorio decided to terminate Plaintiff's employment as of May 31 or June 1 – about a week before his conversation with Mejias, another employee of

13

the New York Defendants.  (Orange Theory Fitness Incident Report Template (Dkt. No. 66-2, Ex. C)); (Dep. of John Gregorio ("Gregorio Dep.") 79:18-20, 111:9-15, 191:5-195:9 (Dkt. No. 66-2, Ex. D).)

Courts have also dismissed claims of aiding and abetting for failure to take remedial action when the plaintiff alleged that the defendant failed to address the primary violation.  *See Dodd*, 489 F. Supp. 3d at 217 (rejecting claim that the defendant was liable as an aider and abettor because she failed to remedy violations where the defendant made some efforts to respond to the complaint and address plaintiff's concerns); *Patrick*, 2017 WL 6521251, at *6 (finding ineffective remedial efforts insufficient to impose aider and abettor liability).  In any event, as Plaintiff herself acknowledges, the Florida Defendants did act on Plaintiff's complaints. (Sipser Decl. ¶¶ 28, 31–32).  While Plaintiff opines that the Florida Defendants should have done more or responded differently to her Facebook messages, this does not amount to active participation in the New York Defendants' alleged harassment and retaliation.  "[M]ere 'ineptitude and insensitivity' in response to a complaint of harassment standing alone is insufficient to support a finding of personal liability."  *Beattie v. Farnsworth Middle Sch.*, 143 F. Supp. 2d 220, 230 (N.D.N.Y. 1998); *see also Patrick,*, 2017 WL 6521251, at *6 (finding that defendants made efforts to remediate the discriminatory conduct and thus such a response could not rise to the level of "active participation" in discrimination to impose liability due to a failure to investigate); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CV-7339, 2015 WL 861718, at *11 (S.D.N.Y. Feb. 3, 2015) (explaining that courts in the Second Circuit have held individuals are not liable for failing to adequately investigate a claim of discrimination).

Perhaps most fatally, Plaintiff has not alleged any facts plausibly establishing that the Florida Defendants shared a discriminatory or retaliatory intent with the New York Defendants.

14

For example, Plaintiff has not pled that the Florida Defendants were involved in Gregorio's alleged conduct of harassing or retaliating against Plaintiff.  And, regarding Plaintiff's complaint about the confidentiality of her complaint, the Court finds Plaintiff's allegations to be implausible.  No fair investigation of Gregorio's conduct could be done without revealing to Gregorio the subject of the investigation.  Thus, Plaintiff has not alleged facts which plausibly establish the Florida Defendants' liability.  As previously explained, *McHenry*, *Patrick*, and *Dodd* illustrate that a defendant's failure to prevent a retaliatory action in which one has no role is not tantamount to a shared retaliatory intent.

      Finally, Plaintiff's argument that the Florida Defendants' exercised oversight and control over the New York Defendants sufficient to confer aider and abettor liability under NYSHRL falters.  To be liable under NYSHRL §296(6), a plaintiff must show *actual participation* by the defendant in the underlying conduct giving rise to the claims.  *See Feingold*, 366 F.3d at 158.  As discussed previously, the Florida Defendants did not actively participate in the harassing or retaliatory conduct of Plaintiff.  Plaintiff states that the Florida Defendants exercised oversight and control over the New York Defendants which Plaintiff asserts is sufficient to qualify as aiders and abettors under the NYSHRL.  (Pl.'s Mem. at 18–19.)  But Plaintiff misrepresents the record, as the New York Defendants made explicitly clear during Oral Argument based on the franchise agreement:

> [The] Florida [D]efendants, do not have the right or power to supervise or discipline any of [the New York Defendants'] employees, to determine the hiring and firing, compensation or terms or conditions of employment of any of [the New York Defendants'] employees or otherwise to control labor relations between [the New York Defendants] and [their] employees.

(Oral Argument Tr. 22–23 (July 28, 2021 Hr'g) (Dkt. No. 87).)  Further, Mark Danyluk, a senior employee of the Florida Defendants, testified multiple times that the Florida Defendants pass

15

along employee complaints to the franchisees because the Florida Defendants "don't get involved in those matters because we are not their employer." (Dep. of Mark Danyluk ("Danyluk Dep.") 70:22-71:2, 77:17-78:4, 93:16-22 (Dkt. No. 66-2, Ex. A).) Danyluk further explained that the Florida Defendants share the information with the franchisees for them to "deal with and solve at the local level." (*Id.* at 70:14-71:14.) Although the Court will not normally consider documents provided by defendants in opposition to a motion to amend, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), the Court may consider documents that the plaintiff chose not to attach or incorporate but were "documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit," *id.*; *see also White v. Anchor House, Inc.*, No. 11-CV-3232, 2011 WL 5402162 at *1 (E.D.N.Y. Nov. 3, 2011) ("In deciding a . . . motion to amend, the [c]ourt may consider, in addition to the complaint, documents that plaintiff attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken.") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Because the relationship between the Florida and New York Defendants is integral to determining whether the Motion would be futile, the Court considers the documents cited and referred to by the Florida Defendants. Therefore, the Court finds that Plaintiff has failed to plausibly demonstrate that the Florida Defendants exercised control over the New York Defendants and thus granting leave to amend for a claim of aiding and abetting against the Florida Defendants would be futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("'Where it appears that granting leave to amend [would be futile or] is unlikely to be productive[,] . . . it is not an abuse of discretion to deny leave to amend.'"); *Murdaugh v. City of N.Y.*, No. 10-CV-7218, 2011 WL

1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although . . . leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile.").

### 2. Additional Defendants

At Oral Argument, the Parties addressed Plaintiff's request for further leave to amend to include additional defendants. (*See* Dkt. (minute entry for July 28, 2021).) Specifically, Plaintiff seeks to include the buyer of the New York Defendant entities. (Letter from Plaintiff to Court (July 12, 2021) ("July 12 Letter") 1 (Dkt. No. 79).) The Court finds that granting Plaintiff leave to amend on such grounds would also be futile. "Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *See De Jesus v. Oyshi Table Corp.*, No. 19-CV-830, 2021 WL 638270, at *6 (S.D.N.Y. Feb. 17, 2021) (quoting *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)). This principle governs here, as the sale of the New York entities was an asset purchase and thus the buyer is not liable for the conduct of the New York Defendants under the NYSHRL. (Letter from the New York Defendants to Court (July 20, 2021) ("July 20 Letter") 1 (Dkt. No. 82).; *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he 'general rule' is that a purchaser of assets does not assume the predecessor's liability . . . ."); *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 214 (S.D.N.Y. 2019) ("Generally, under New York common law, a business entity's acquisition of assets from another . . . results in no successor liability, with four exceptions: (1) the successor corporation expressly or impliedly assumed the liabilities of its predecessor; (2) there was a consolidation or de facto merger of the two business entities; (3) the successor is a 'mere continuation' of the predecessor; or (4) the transaction is entered into fraudulently to escape such obligations."); *Xue Ming Wang v. Abumi Sushi Inc.*, 262

17

F. Supp. 3d 81, 90 (S.D.N.Y. 2017) ("To hold a purchaser of assets liable as a successor without notice of the potential liability or where the predecessor is capable of providing relief to the wronged party simply because the purchaser used the purchased assets and retained substantially the same work force to conduct a substantially similar business would directly hamper, rather than facilitate, the transfer of corporate assets to their most valuable uses."); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 408 (S.D.N.Y. 2012) (noting that courts have "consistently held that the equitable considerations behind successor liability may make it inappropriate" to impose successor liability on an innocent purchaser when the predecessor is able to provide relief); *accord Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985) ("The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price."). And, even if successor liability did attach to the buyer, the New York Defendants have assumed all liabilities in two separate indemnification clauses. (July 20 Letter at 2–3.) Specifically, the New York Defendants have agreed to indemnify the buyer for "any matter related to, arising out of or in connection with" this case. (*Id.* at 3.) As such, the New York Defendants are responsible for any potential damages award that may result from this

Action and the Court finds that the appropriate parties are already named as defendants. (*Id.*)

The Court finds that granting further leave to amend based on successor liability is futile.[2,3]

### III.  Conclusion

For the reasons stated above, Plaintiff's Motion is denied.  The Clerk of Court is respectfully requested to terminate the pending Motion.  (Dkt. No. 65.)

SO ORDERED.

DATED:	September 17, 2021
	White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[2] While the Court deems further amendment futile, the Court notes that the New York Defendants represented during Oral Argument that should the Plaintiff be successful on her claims, the New York Defendants will be in a position to provide relief to Plaintiff even in spite of the asset purchase.  Though the mere existence of the asset purchase by the buyer does not render the New York Defendants incapable of providing relief to Plaintiff, the Court thought it important to memorialize the New York Defendants' representations regarding their ability to pay for any potential recovery for Plaintiff in the future.  *See Xue Ming Wang*, 2622 F. Supp. 3d at 95 (holding that an entity's sale of its assets and subsequent dissolution did not automatically render them unable to provide relief to plaintiff).

[3] With respect to Plaintiff's Title VII claims, she raises the substantial continuity test as it relates to successor liability.  Because Plaintiff has failed to offer any factual or legal support for the notion that an entity which purchased a predecessor company should bear any liability for prior legal matters in spite of two explicit indemnification clauses in which the New York Defendants assumed all liabilities, the Court declines to address this issue.